UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TROY ELDRIDGE,<br><br>  Plaintiff,<br><br>v.<br><br>PET SUPERMARKET, INC.,<br><br>  Defendant. | Case No. _____<br><br>(JURY TRIAL DEMANDED) |

## CLASS ACTION COMPLAINT

Plaintiff Troy Eldridge, individually and on behalf of all others similarly situated, sues the Defendant Pet Supermarket Inc., and alleges as follows:

### NATURE OF ACTION

1. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of Defendant Pet Supermarket, Inc. in transmitting advertising and telemarketing text messages, *en masse*, to Plaintiff's cellular telephone and the cellular telephones of numerous others similarly situated persons through the use of an automatic telephone dialing system ("ATDS") without any of the recipients' prior express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

### PARTIES

2. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Florida, and the

subscriber and user of the cellular telephone number (310) ***-2457 (the "2457 Number").

3. Defendant is, and at all times relevant hereto was, a Florida corporation and a "person" as defined by 47 U.S.C. § 153(39). Defendant's primary corporate headquarters are in Sunrise, Florida.

## JURISDICTION AND VENUE

4. This is an action for statutory damages collectively exceeding $75,000.00, exclusive of interest, costs and attorneys' fees, and for injunctive and declaratory relief.

5. This Court has jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

6. Defendant is subject to personal jurisdiction in Florida under Fla. Stat. § 48.193 because it operates, conducts, and carries on business in Florida, because it owns real property in Florida and because it maintains its corporate headquarters in Florida.

7. Defendant is further subject to personal jurisdiction in Florida under Fla. Stat. § 48.193 because it initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing or advertising text messages into the state of Florida, via an ATDS and without the requisite prior express written consent, in violation of the TCPA.

8. Specifically, Defendant initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertising and/or

telemarketing SMS text messages to the 2457 Number. Plaintiff received such messages while residing in and physically present in Florida. Defendant's products and/or services that it advertised and/or marketed through its unsolicited SMS text messages are sold in Florida.

9. Plaintiff's claims for violation of the TCPA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's advertising and telemarketing messages, including the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Florida.

10. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C.§ 1391 (b)-(c) because Defendant is a Florida corporation that is deemed to reside in this judicial district and because a substantial part of the events and/or omissions giving rise to the claims at issue occurred in this judicial district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

11. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, among other things, making any call, or sending any text message, to a wireless number via an ATDS absent an emergency or the prior express written consent of the party called.

12. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited absent the requisite consent because such

transmissions are a greater nuisance than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

13. According to a study conducted by the Pew Research Center, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1] Indeed, one of the most prevalent bulk advertising and telemarketing methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

14. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because most people physically carry their wireless telephones with them, SMS text messages are received virtually anywhere in the world and can instantly interrupt daily life.

15. Unlike more conventional advertisements, advertising and telemarketing SMS text messages can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited February 28, 2018).

4

message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

16. In 2013, in response to growing concern over unwanted advertisements and telemarketing material being sent to consumers via SMS text message, the FCC updated its rules on consent to require that companies obtain the "**prior express written consent**" of the recipient before using an ATDS to make any call or send any SMS text message that introduces an "advertisement" or constitutes "telemarketing." *See* 47 C.F.R. 64.1200(£)(8).

17. Prior to using an ATDS to send any text message that contains advertising or telemarketing material, FCC regulations required Defendant to obtain the Plaintiff's prior express written consent. The term "prior express written consent" is defined as an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

18. Defendant sent Plaintiff and members of the Class marketing or telemarketing messages without first obtaining Plaintiff's or Class members' prior express written consent as required under the TCPA.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

19. Defendant owns and operates a chain of pet care supply retail stores throughout the United States, including in Florida, Georgia, Alabama, Tennessee,

5

South Carolina, North Carolina, Kentucky, Texas, California, and Nevada.

20.   Defendant sells pet food, treats, toys, beds, cages, carriers, collars, leads, feeders, bowls, and a wide range of other pet items. Together with its affiliated brands, Defendant is believed to generate about $1 billion in annual sales revenue.

21.   On or about December 19, 2017, Plaintiff visited a Pet Supermarket store in Miami, Florida to buy a few things for his dog.

22.   During the store visit, Plaintiff learned that he could win a yearlong supply of free pet food by texting the word "PETS" to shortcode 650-47.

23.   Plaintiff texted the word "PETS" from the 2457 Number to shortcode 650-47 solely for a chance to win free pet food.

24.   In response, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, two SMS text messages to the 2457 Number.

25.   Specifically, Defendant transmitted the following two text messages to the 2457 Number:

**PETS: Entry received! You're incld in this month's drawing and to receive text offers. Msg&Data rates may apply. 4msgs/mo. Text HELP for help - Reply STOP to end**

\*\*\*

**PETS: No purchase necessary. 1 winner/mo. Rules at http://mmrs.co/5pf5F You consent to receive autodialed text**

> **messages from Pet Supermarket. -Reply STOP to end**

26. Then on February 24, 2018, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, another SMS text message that introduced an advertisement and/or constituted telemarketing material to the 2457 Number. This message was sent by Defendant without Plaintiff's consent, written or otherwise, was made for the purpose of encouraging Plaintiff's purchase of Defendant's merchandize and introduced the following advertisement:

> **PET SUPERMARKET: We're updating our # to better serve you. Soon, your favorite pet deals will come from 37623. Save $5 w/code14136end 2/25 -Reply STOP to end**

27. Defendant apparently retained Plaintiff's cell phone number when Plaintiff texted the word "PETS" to shortcode 650-47 in connection with Defendant's free pet food raffle and, in violation of the TCPA, automatically enrolled Plaintiff's cell number in its automated text message advertising and telemarketing campaign.

28. The source of each of the foregoing unsolicited SMS text messages sent by Defendant to the 2457 Number was "650-47." This is an SMS short Code owned or leased by or on behalf of Defendant or Defendant's agent(s) or affiliate(s), and is used to operate Defendant's automated text message advertising and telemarketing program.

29. Then, on Friday April 20, 2018, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, yet another SMS

text message again containing advertising and/or telemarketing materials to the 2457 Number. This fourth message was also sent by Defendant without Plaintiff's consent, written or otherwise, was sent to encourage Plaintiff to visit Defendant's brick and mortar store location, purchase a pet, and introduced the commercial availability of those pets as follows:

> **PET SUPERMARKET: Welcome to**
> **our New #! Puppy Kisses &**
> **Purring Faces await your**
> **Embraces at our Adoption Event**
> **this Fri, Sat&Sun. See you there!**
> **Reply STOP to end**

30. By the time Defendant sent this fourth unsolicited SMS text message, Defendant had already placed large sized advertisement banners in at least some of its stores setting forth the various fees to be charged in connection with any particular pet adoption as advertised in the April 20, 2018 text message.

31. Unlike the previous unsolicited SMS text messages sent by Defendant to the 2457 Number, the source of the fourth unsolicited SMS text message was "376-23." Like the short code 650-47 that Defendant previously utilized, 376-23 is also an SMS short Code owned or leased by or on behalf of Defendant or Defendant's agent(s) or affiliate(s), and is used to operate Defendant's automated text message advertising and telemarketing program.

32. On May 11, 2018, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, still another SMS text message again containing advertising and/or telemarketing materials to the 2457 Number. Like those before it, this fifth message was also sent by Defendant without

8

Plaintiff's consent, written or otherwise, was sent to encourage Plaintiff to purchase consumer goods, and introduced the commercial availability of those consumer goods as follows:

> **PET SUPERMARKET: Happy Mother's Day! Celebrating all Pet Moms this weekend w/ $5 off $30 Coupon #14245. Ends Sun 5/13 Reply STOP to end.**

33. On May 25, 2018, Defendant transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, yet another SMS text message again containing advertising and/or telemarketing materials to the 2457 Number. Like those before it, this sixth message was also sent by Defendant without Plaintiff's consent, written or otherwise, was sent to encourage Plaintiff to purchase consumer goods, and introduced the commercial availability of those consumer goods as follows:

> **PET SUPERMARKET: Celebrate Memorial Day Weekend with Savings! Save $3 on your purchase of $15 or more 1/ code 14235 Ends 5/28. Reply STOP to end.**

34. On June 8, 2018, Defendant again transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, yet another SMS text message again containing advertising and/or telemarketing materials to the 2457 Number. Like those before it, this seventh message was also sent by Defendant without Plaintiff's consent, written or otherwise, was sent to encourage Plaintiff to purchase consumer goods, and introduced the commercial availability of those consumer goods as follows:

9

> **PET SUPERMARKET: Looking to**
> **Add a pet to the family? Adoptions**
> **in-store Fri, Sat &Sun + FREE**
> **AdoptionsGuide w/Coupons for new**
> **pet parents. Reply STOP to end.**

35. On June 21, 2018, Defendant again transmitted, or caused to be transmitted, by itself or through an intermediary or intermediaries, yet another SMS text message again containing advertising and/or telemarketing materials to the 2457 Number. Plaintiff actually received this latest advertising message on his cell phone while outside of the United States and attempting to enjoy a vacation with his family. Like those before it, this last message was also sent by Defendant without Plaintiff's consent, written or otherwise, was sent to encourage Plaintiff to purchase consumer goods, and introduced the commercial availability of those consumer goods as follows:

> **PET SUPERMARKET: Need to**
> **restock? Save on your favorite**
> **food, treats & toys this weekend –**
> **$5 off $30 coupon #14298. Ends**
> **Sun 6/24. Reply STOP to end.**

36. All telephone contact by Defendant and/or its affiliates, subsidiaries, or agents to Plaintiff at the 2457 Number occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited advertisement and/or telemarketing SMS text messages were sent from "650-47" and "376-23," which are short code telephone numbers used to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial either random or sequential

numbers, *en masse*, in an automated fashion without human intervention. In addition, all SMS text messages Defendant sent to the 2457 Number were written in an impersonal manner.

37. The 2457 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b)(1)(A)(iii).

38. The complained of SMS text messages to the 2457 Number constitute advertisements as defined by 47 C.F.CR. § 64.1200(f)(1).

39. The complained of SMS text messages to the 2457 Number constitute telemarketing as defined by 47 C.F.CR. § 64.1200(f)(12).

40. The complained of SMS text messages to the 2457 Number did not constitute calls made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

41. Defendant's SMS text messages advertising and telemarketing its goods and services invaded Plaintiff's privacy, intruded upon his seclusion and solitude, wasted his time by requiring him to open and read the messages, depleted his cellular telephone battery, and caused him to incur a usage allocation deduction to his text messaging or data plan.

## **CLASS REPRESENTATION ALLEGATIONS**

42. Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Fla. R. Civ. P. 1.220(b)(3). The "Class" Plaintiff seeks to represent is comprised of and defined as follows:

> All persons who, while residing within the United States, received one or more SMS text messages, sent by or on behalf of Defendant or an affiliate, subsidiary, or agent of Defendant, through the use of an automatic dialing system, which SMS text message (1) was sent to encourage the purchase of property goods, or services or (2) contained material advertising the commercial availability or quality of any property, goods, or services.

43. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and any Defendant's legal representatives, assigns or successors. Also excluded are any judge presiding over this case and any member of any judge's immediate family. Members of the Class are referred to as "Class Members."

44. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclass) after further discovery.

45. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendant and/or its affiliates or subsidiaries.

46. This Complaint seeks injunctive relief and monetary damages on behalf of himself and each of the Class Members.

47. This action may properly be brought and maintained as a class action pursuant to Fla. R. Civ. P. 1.220(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

48. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

49. **Numerosity**. The number of persons within the Class is substantial,

believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of each of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

50. **Typicality**. Plaintiff received at least one SMS text message that constituted an "advertisement" or "telemarketing" via an ATDS, without first having provided his "prior express written consent" to receive them from the Defendant. Consequently, the claims of Plaintiff are typical of those of the other Class Members he seeks to represent, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members he seeks to represent. Plaintiff and all Class Members have been impacted by, and face continuing harm out of, Defendant's violations and/or misconduct as alleged herein.

51. **Adequacy**. As Class representative, Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and is able to fairly and adequately represent and protect the interests of the Class Members. Plaintiff has raised viable claims of the type reasonably expected to be raised by Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek permission to amend this Complaint to add additional representatives of the Class or assert additional claims.

52. **Competency of Class Counsel**. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. These counsel are experienced in handling complex class action claims, including class action cases alleging violations of the TCPA.

53. **Commonality and Predominance**. There are well defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of each of the Class. These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

  a. Whether Defendant and/or any of its affiliates, subsidiaries, or agents transmitted advertising or telemarketing SMS text messages to Class Members' cellular telephones;

  b. Whether the SMS text messages transmitted by Defendant and/or any of its affiliates, subsidiaries, or agents were transmitted using an automatic telephone dialing system;

  c. Whether Defendant and/or any of its affiliates, subsidiaries, or agents can meet their burden to show they obtained prior express written consent (as defined by 47 C.F.R. 64.1200(£)(8)) to send the complained of text messages;

  d. Whether the complained of conduct was knowing and/or willful;

  e. Whether Defendant and/or any of its affiliates, subsidiaries, or agents

should be enjoined from engaging in such conduct in the future.

54. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every member of each of the Class could afford to pursue individual litigation, the Court system can not. It would be unduly burdensome to the courts if individual litigation of numerous cases would proceed. Individualized litigation would also present the risk of varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class Members did not provide their prior express written consent as is required to authorize such text messages to be sent to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular

telephone providers.

55. Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such non-party Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

56. Defendant and/or any of its affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Class Against Defendant)*

57. Plaintiff incorporates by this reference paragraphs 1-56 of this Complaint as if fully stated herein.

58. The foregoing acts and omissions constitute violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

59. Because of the Defendant's violations of 47 U.S.C. § 227, Plaintiff and

all Class Members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

60. Plaintiff and all Class Members are also entitled to, and do seek, an award of $500.00 in statutory damages for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

61. Plaintiff and Class Members also seek an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
KNOWING AND/OR WILLFUL VIOLATION OF THE
TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Class Against Defendant)*

62. Plaintiff incorporates by this reference paragraphs 1-56 of this Complaint as if fully stated herein.

63. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

64. Because of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

65. Plaintiff and all Class Members are also entitled to, and do seek, treble damages of up to $1,500.00 for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

66. Plaintiff and Class Members also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief and judgment in his favor, as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of the Defendant's violations of 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each and every violative SMS text message;

C. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by the statute, of up to $1,500.00 for each and every violative SMS text message;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

E. An Order certifying this action to be a proper class action pursuant to Fla. R. Civ. P. 1.220, establishing an appropriate Class and any additional subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing Plaintiff's counsel as counsel for the Class.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby demands a jury trial on all issues so triable.

June 22, 2018                              Respectfully submitted,

                                             CAREY RODRIGUEZ MILIAN GONYA LLP

                                             By: */s/ David P. Milian*
                                             **David P. Milian** (Fla. Bar No. 844421)
                                             Email: dmilian@careyrodriguez.com
                                             Secondary: mmartucci@careyrodriguez.com
                                             **Ruben Conitzer** (Fla. Bar No. 100907)
                                             Email: rconitzer@careyrodriguez.com
                                             Secondary: cperez@careyrodriguez.com
                                             1395 Brickell Avenue, Suite 700
                                             Miami, FL 33131
                                             Telephone: (305) 372-7474
                                             Facsimile: (305) 372-7475
                                             ***Counsel for Plaintiff Troy Eldridge***