UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TROY ELDRIDGE,

Plaintiff,

v.

PET SUPERMARKET, INC.,

Defendant.

CASE NO. 1:18-CV-22531-KMW

JURY TRIAL DEMANDED AND INJUNCTIVE RELIEF SOUGHT

**PLAINTIFF TROY ELDRIDGE'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF THOMAS L. BLACKBURN**

Plaintiff Troy Eldridge, on behalf of himself and the putative class, moves pursuant to Local Rule 16.1(j) and Federal Rules of Evidence 104, 403 and 702 to exclude the untimely Declaration of Thomas L. Blackburn and to prevent him from offering any supposed expert opinions at trial.[1] Blackburn's testimony must be excluded because: (1) he does not have the necessary qualifications to render any expert opinions on matters pertinent to this case, (2) his opinions are not based on any actual methodology, but are instead grounded on a biased combination of indiscriminate disagreement with the Plaintiff's expert's opinions and a blind parroting of Defendant's contract partners' hearsay testimony, (3) his opinions, which are riddled with legal conclusions, would not aid the trier of fact, and (4) his opinions impermissibly bolster

[1] Plaintiff previously moved to strike Defendant's untimely disclosure of Blackburn as its expert. Defendant's procrastination in submitting the report until after the Court's deadline caused substantial prejudice to the Plaintiff because Defendant then refused to produce Blackburn for deposition before the discovery cutoff. *See* ECF No. 50. On July 25, 2019, the Court denied this motion but required Defendant to produce Blackburn for deposition. ECF No. 74. However, because the Plaintiff is nonetheless required to meet the Court's *Daubert* briefing deadline without having been able to depose Blackburn, the prejudice caused by Defendant's untimely report and its refusal to produce its expert during the discovery period remains apparent.

the testimony of Defendant's autodialer.

## I. INTRODUCTION

Plaintiff brought this class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), to address his receipt of marketing text messages that Defendant sent to his cell phone using automated telephone dialing systems ("ATDS"). "The TCPA's definition of an ATDS 'covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called … come from calling lists.'" *Reyes v. BCA Fin. Serv's, Inc.*, 312 F.Supp. 1308, 1315 (S.D. Fla. 2018); *see also Morse v. Allied Interstate LLC*, 65 F.Supp.3d 407, 410 (M.D. Pa. 2014) (test looks only to "if there is human intervention at the time a call is made/placed or when a number is actually dialed"); *see also Sterk v. Path, Inc.*, 46 F.Supp.3d 813, 820 (N.D. Ill. 2014) ("It is such calling that the [ATDS] section of the TCPA at issue in this case covers, not the collection of numbers for storage.").

To bolster its wholly technical merits and class certification defenses, Defendant hopes to proffer Blackburn, an unacclaimed supposed "expert," who pronounces that the Sweeppea and Oracle text messaging systems that Defendant exploited to broadcast its more than seven million marketing messages "do not meet the characteristics of an [ATDS] as defined by the TCPA" and that "the identification and contact information associated with a cellular telephone number that may have been sent by the Sweeppea and Oracle text messaging systems are not reliable as they cannot always be verified." A copy of Blackburn's report is attached as **Exhibit A** and is cited to as "Blackburn Rep."

However, the opinions and testimony of Blackburn should be excluded because: (1) Blackburn has no experience in, and is not qualified to provide expert opinions on, ATDS and ascertainability issues; (2) Blackburn offers improper legal conclusions in opining that the

automated dialing systems used by Defendant do not fall within the definition of an ATDS; (3) Blackburn's methodology—which contains no analysis of the automated dialing systems' respective operating manuals and is instead based almost entirely on hearsay testimony—is unreliable; and finally, (4) Blackburn's testimony constitutes impermissible expert bolstering of Defendant's witnesses.

## II. LEGAL STANDARDS

Because an expert's testimony can be "powerful and quite misleading," the district court performs a "*critical* 'gatekeeping' function" by determining whether or not to permit such evidence at trial. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis added). Courts must undertake an "'*exacting* analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (emphases in original) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)).

To determine the admissibility of expert testimony, courts conduct the following three-prong inquiry, considering whether:

> (1) [Qualification:] the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) [Reliability:] the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]; and
>
> (3) [Helpfulness:] the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcross Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589)). The burden to establish qualification, reliability, and helpfulness rests on the party desiring to present the purported expert's testimony. *Frazier*, 387 F.3d at 1260.

## III. ARGUMENTS

For the following reasons, Blackburn's expert opinion testimony should be excluded from evidence.

### A. Blackburn's ATDS Testimony Should be Excluded

#### ***a. Blackburn is unqualified to opine on dialing system capabilities***

To qualify as an expert, a witness must have "knowledge, skill, experience, training, or education relevant to such evidence or fact in issue." Fed. R. Evid. 702. Determining whether a witness is qualified to testify as an expert requires the trial court to examine the alleged expert's credentials in light of the subject matter of the proposed technology. *See City of Tuscaloosa,* 158 F.3d at 562-63. Courts exclude expert testimony whenever the expert does not possess specific experience or a background with the topic on which he is providing an opinion. *See, e.g., United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (affirming exclusion of freelance chemistry consultant with PhD in plant pathology as an expert on controlled substances because he did not have a chemistry degree, did not possess the appropriate license, and only worked on controlled substances on "isolated projects"); *Montgomery v. Noga*, 168 F.3d 1282, 1302-03 (11th Cir. 1999) (upholding refusal to permit witness to testify as expert on software licensing in case involving shareware and utility licensing because his knowledge was limited to commercial software use by individual banks).

Blackburn bases his untimely opinion that neither messaging system used by Defendant constitutes an ATDS, in part, on what he perceives as the meaning of the term "ATDS." But Blackburn has no prior experience in TCPA compliance, nor was he ever employed by the Federal Communications Commission or any related governmental or other legal body that would render him competent to testify to the meaning of the term "ATDS" apart from simply reading the FCC

regulations and the statute like anyone else. Of course, expert testimony regarding matters outside of the witness's expertise (such as, in the instant case, Blackburn's proposed testimony on statutory construction) is inadmissible. *See Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1357-58 (S.D. Fla. 2015) (ADA compliance expert was not qualified to testify as to purported service dog's status as a service animal). Moreover, Blackburn's attempt to opine on what constitutes an ATDS constitutes an improper legal conclusion. *See infra.*

Blackburn is unqualified because he lacks relevant academic and professional experience working with ATDS and/or the TCPA. His resumé confirms he never authored any articles or given any presentations on the technical aspects of any ATDS at all, let alone the Sweeppea and Oracle systems at issue here. Blackburn Rep. at 19-36. Indeed, the last time Blackburn published anything was years before the TCPA was even enacted in 1982 (the TCPA wasn't enacted until nearly a decade later in 1991). *See* Blackburn Rep. at 23. Although Blackburn might have a rudimentary understanding of SMS messaging (*see, e.g.*, Blackburn Rep. at 35), this basic knowledge arose, and would only be relevant, in the patent infringement litigation context and, simply stated, has nothing at all to do with autodialer functionality or the TCPA. *See Noga*, 168 F.3d 1282 at 1303 ("these two fields were 'totally distinguishable'"); *see also Cordoves*, 104 F.Supp. at 1358 ("expert testimony regarding matters outside of the witness's expertise is inadmissible").

And while he appears to have been retained as an expert in various legal matters, Blackburn's only experience with the TCPA (aside from this case) is limited to one single "[c]onsulting case" where his involvement was further restricted to only a single "call with [an] attorney to discuss equipment if ATDS – Def." for a case styled *Garcia v. FAC US LLC. See* Blackburn Rep. at 24. One telephone call is unquestionably insufficient to demonstrate the

requisite "knowledge, skill, experience, training, or education relevant to such evidence or fact in issue." Fed. R. Evid. 702; *see also United States v. Brown,* 415 F.3d at 1269 (11th Cir. 2005) ("we can find no abuse of discretion in light of the fact that Steele has only worked with 1,4-butanediol and GHB on 'isolated projects'").

Accordingly, Blackburn lacks the qualifications and professional experience necessary to opine on whether the systems at issue here are an ATDS as defined by the TCPA.

***b. Blackburn's unreliable methodology cannot be admitted***

Blackburn's testimony is unreliable as he fails to set forth any methodology that he supposedly followed to reach his opinions. Instead, he simply claims to have read Plaintiff's expert's, Randall Snyder's, opinions and that he disagrees with them. *Cf. McClain v. Metabolife Intern., Inc.*, ("As a gatekeeper the court must do a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can property be applied to the facts in issue.'") (quoting *Daubert* at 593-94)).

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier,* 387 F.3d at 1262. Courts routinely exclude expert opinions that are based on nothing more than speculation or subjective belief. *See, e.g., Zygarlowski v. Royal Caribbean Cruises Ltd.*, 2013 WL 7137886, at *8 (S.D. Fla. Feb. 27, 2013) (exclusion warranted where expert "fail[ed] to provide any standard, guideline, or other basis to support her opinion" and, therefore, "because [her] opinions . . . [were] supported only by her 'subjective belief or unsupported speculation,' they [did] not pass the threshold for reliability").

An expert may rely upon inadmissible hearsay only if the facts or data are "of a type

reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Frazier*, 387 F.3d at 1260 (quoting Fed. R. Evid. 703). An expert's opinion based on mere conclusions without the application of a reliable methodology and without reference to specific facts in the record is inadmissible. *See id.* at 1261 ("If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong").

Here, Blackburn did not engage in any reliable analysis to determine the true capabilities of the systems utilized by Defendant to send text messages. Rather, to reach his legal conclusion that neither of the messaging systems used by Defendant is an ATDS, Blackburn simply relied almost exclusively upon the hearsay testimony in a single deposition transcript, "public information" on each system's respective website, and his general and conclusory disagreement with the Plaintiff's expert's opinions. *See* Blackburn Rep. at ¶ 18. Moreover, this "public information" consists largely of marketing information rather than technical (and typically proprietary and not disclosed to the public) information capable of describing the configuration of each messaging system upon which an expert opinion may be properly based. In this Circuit, materials published on any company's website generally carry only limited value to prove whether text messages were sent using an ATDS. *See, e.g., Gaza v. LTD Fin. Servs., LP,* No. 8:14-cv-1012, 2015 WL 5009741, at *2 (M.D. Fla. Aug. 24, 2015) (rejecting use of a "case study" found on website to prove calls were made by an ATDS, noting that a "company's website is a marketing tool . . . full of imprecise puffery that no one should take at face value" and "not self-authenticating") (citations omitted).

Simply stated, Blackburn does not cite to any company manuals, specifications, or technical data regarding the exact configurations or capabilities of systems in question and,

presumably, he did not actually review any. The Court should not permit Defendant to present to the jury an expert opinion based on little more than whatever information Blackburn was able to find on the internet.

Indeed, Blackburn's flawed methodology is simply too attenuated from the underlying facts to be of any use, with the gaps being filled only by Blackburn's speculation. *See McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (affirming exclusion of opinion too remote from underlying data). Indeed, "an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions, as we have here." *Id.* (citing *Gen. Elec. v. Joinder*, 522 U.S. 136, 146 (1997)); *see also Hendrix ex. Rel. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) ("Courts are cautioned not to admit speculation, conjecture or inference that cannot be supported by sound scientific principles"). Here, there is no evidence that Blackburn has ever operated any dialing system at all.

In addition to the foregoing, the grounds for various Blackburn's opinions (and impermissible legal conclusions) are actually based on incorrect factual premises. For example, Blackburn summarily contends, without citing to the record, that the import of the user data, i.e., consumers' cell phone numbers, required human intervention. Blackburn Rep. at ¶ 66. But Defendant itself readily conceded that users are "automatically enrolled" simply by texting the word "PETS" to a short code telephone number. Dep. Def. 30(b)(6) Rep. at 103:18-22 (transcript on record at ECF No. 48-1); *see also id.* at 124:15-19.

Moreover, Defendant already admitted that once a message was set to deploy, unless Defendant intervened, "the text message[s would] just automatically have gone out." Dep. Def. 30(b)(6) Rep. at 16:17-20; *see also id.* at 103:18-22 (Defendant admitting that it "automatically enrolled Plaintiff's cell phone in its automated text message advertising and telemarketing

campaign."). Moreover, third-party autodialer Sweeppea has similarly admitted that its messages are mobile-terminated messages, which are associated with technological capabilities contrary to Blackburn's opinions. *See* Dep. Sweeppea 30(b)(6) Rep. at 37:15-38:19 (cited on record at ECF No. 48-2). And likewise, third-party autodialer Oracle concedes that "[t]here isn't a person sitting next to a computer pushing a button to send a message back to the consumer when a text to short code message is received" and that "you can essentially go on vacation and it [the messages] will go out as soon as the computer clock hits that [designated] time and date." Dep. Oracle 30(b)(6) Rep. at 56:11-15, 89:3-90:11 (attached as **Exhibit B**).

In light of the same statements of record by Defendant and its agents, Blackburn's unsupported conclusion that obtaining and uploading lists of cellular numbers requires human intervention are likewise entirely contrary to the factual record and consist of pure speculation. Blackburn Rep. at ¶ 66.

***c. Blackburn's report is riddled with improper legal conclusions***

Defendant's principal defense is that neither the Sweeppea nor the Oracle systems constitute an "ATDS." Courts in this district have previously excluded expert testimony that, like Blackburn's, seeks to declare whether a dialing system is or is not an ATDS. *See, e.g., Strauss v. CBE Grp., Inc.*, No. 15-cv-62026, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 22, 2016). To illustrate, Blackburn's declaration is riddled with impermissible legal conclusions, such as:

- "[I]t is my opinion that the Sweeppea and Oracle Text messaging systems do not meet the characteristics of an [ATDS] as defined by the [TCPA] for this term."

- "If there was no human intervention, no messages would be sent. All of this needs to be considered when determine whether it is an ATDS."

- "When trying to determine whether a text messaging system such as the Sweeppea and Oracle messaging systems meets the ATDS definition, focusing on the level of human intervention used in sending a text message is very

> important. The system must be analyzed to determine the extent that human intervention is required to transmit messages to the cellular phone numbers."

Blackburn Rep. at ¶¶ 5, 47, 67. *See also id.* at ¶¶ 77-80 (interpreting various databases' legal disclaimers to conclude the databases are not reliable). Indeed, offering a legal conclusion appears to be the very purpose for which Blackburn was retained in the first place. *See id.* at ¶ 2 ("I have been retained . . . to provide my opinions relating to . . . whether the Sweeppea and Oracle Text messaging systems meet the characteristics of an Automatic Telephone Dialing System (ATDS) as defined by the Telephone Consumer Protection Act (TCPA) for this term.").[2]

It is well-settled, however, that an expert may not offer legal conclusions. *See, e.g., Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (trial court erred in admitting testimony that insurer had certain contractual duties as expert "cannot testify to the legal implications of conduct [because] the court must be the jury's only source of law"); *see also Cubiel v. Columbia Hosp. (Palm Beaches ) Ltd. P'Ship.*, 2005 WL 5955691, at *4 (S.D. Fla. Jan. 11, 2005) ("As a general rule an expert's testimony on issues of law is inadmissible.") (quoting *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). Stated differently, "[w]here an expert offers an opinion as to the legal implications of the facts, that testimony . . . encroaches on the responsibilities of the judge and jury, and is inadmissible." *Legg v. Voice Media Grp., Inc.*, No. 13-cv-62044, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014). This makes sense because, "[a]fter all, each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Hibbett Pat. Care, LLC v. Pharm. Mut. Ins. Co.*, 2017 WL 2062955, at *2 (S.D. Ala. May 12, 2017) (internal quotations

---

[2] *See Cordoves, infra,* 104 F.Supp. 3d at 1365 (quoting *Burkhart v. Washington Metro. Area Transit. Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("If testimony 'track[s] the language of the applicable statute' or uses a term that 'has a specialized legal meaning that is more precise than the lay understanding of the term,' the testimony is an impermissible legal conclusion.").

omitted). Guided by this rationale, this Court has previously held that an expert may not offer an opinion regarding whether a telephone dialing system is or is not an ATDS because such an opinion is an impermissible legal conclusion. *See, e.g.*, *Strauss*, 2016 WL 2641965, at *2; *Legg*, 2014 WL 1767097, at *4.

For example, in *Strauss*, the court ruled that the plaintiff's expert "may not offer a conclusion as to the legal definition of an ATDS, or the legal implications of using a predictive dialer," and excluded portions of an expert's report in which the expert "stat[ed] that the [defendant] used an ATDS and the equipment used to call the Plaintiff fits within the statutory definition of an ATDS." *Strauss*, 2016 WL 2641965, at *2; *see also Legg*, 2014 WL 1767097, at *4 (excluding expert's opinion "that the systems [the defendant] used to send its text messages meet the legal definition of an [ATDS]" as an improper legal conclusion).

The same result applies here and "because [Blackburn] may not offer a conclusion as to the legal definition of an automatic dialing system, or the legal implications of [Defendant]'s systems in relation to that definition, the Court [should] exclude his proposed testimony that [Defendant] used an 'automatic telephone dialing system' within the meaning of the TCPA." *Legg*, 2014 WL 1767097, at *4.

Moreover, Blackburn summarily concludes that there is sufficient human intervention in the operation of Defendant's dialing machinery to remove them from the scope of an ATDS. *See Reyes v. BCA Fin. Serv's, Inc.*, 2018 WL 2849768, at *2 (S.D. Fla. Jun. 8, 2018) ("I granted summary judgment on the ATDS issue because the Noble predictive dialer, as used by BCA, was an ATDS as a matter of law."). Rather than simply describing the instances where human intervention allegedly occurs and allowing the judge or jury to extrapolate its relevance, Blackburn impermissibly puts the cart before the horse rather than explain the salient facts and their relevance.

***d. Blackburn's testimony improperly bolsters Sweeppea's testimony***

Defendant and Sweeppea's interests are aligned here as any verdict against Defendant necessarily confirms that Sweeppea's text marketing program violates the TCPA. Indeed, Sweeppea and Defendant have been in regular contact throughout this lawsuit (including especially immediately before Sweeppea's corporate representative's deposition). *See* Blackburn Rep. at ¶¶ 22; *see also* various correspondences between Sweeppea and Defendant, attached as **Exhibit C**. Further, Sweeppea's alignment and motivation to exculpate Defendant's conduct is amplified here because Defendant claims that it relied on Sweeppea to ensure that Defendant's text message marketing program complied with the TCPA. Dep. Def. 30(b)(6) Rep. at 110:13-111:1 (confirming that Defendant relied on its text message partners to stay compliant with the TCPA). Indeed, Defendant has raised an affirmative defense that may seek to hold Sweeppea responsible for Defendant's TCPA violations. Answer, 8, ECF No. 18.

Accordingly, Defendant's reliance on Sweeppea's self-serving deposition testimony, with whom it is closely aligned, constitutes impermissible witness bolstering. *See U.S. v. Whitted*, 11 F.3d 782, 785-86 (8th Cir. 1993) (although an expert may summarize evidence in reaching his conclusion, he may not rely on the comments or allegations of a witness as the sole basis for his opinion). Indeed, "[t]hat such evidence [vouching testimony by an expert witness] is improper, in both state and federal trials, can hardly be disputed." *Snowden v. Singletary*, 135 F.3d 732, 738 (11th Cir. 1998); *see also Dorsey v. Chapman,* 262 F.3d 1181, 1186 (11th Cir. 2001) (recognizing "expert testimony bolstering the credibility of a witness is improper.").

Blackburn's opinions primarily repeat Sweeppea's deposition statements, and seek to impermissibly bless them with the highly coveted "expert witness" label affixed. In addition to the reasons for being forbidden by *Daubert*, discussed *supra*, this practice is also rightly disallowed

because Blackburn's "adoption of [Sweeppea's testimony] as the primary basis for his expert testimony still crosses the line into improper bolstering." *Hale Cty A&M Transp., LLC v. City of Kansas*, 998 F.Supp.2d 838, 846 (W.D. Miss. 2014).

Moreover, "[w]here, as here, the ultimate outcome primarily hinges on the believability of opposing fact witnesses, this type of testimony improperly invades the 'jury's exclusive province to decide witness credibility.'" *Id.* citing *Whitted*, 11 F.3d at 786. And Blackburn's supposed expert opinion will thus raise a "real danger that the jury may accord undue weight to expert testimony that attempts to validate [Sweeppea's] testimony. *U.S. v. Pavlenko,* 845 F.Supp. 2d 1321, 1327-28 (S.D. Fla. 2012).

Accordingly, because Blackburn's opinions merely corroborate curated pieces of Sweeppea's testimony without the application of special expertise, his opinions threaten to cause prejudice or confusion, thus outweighing any probative value. The Court should therefore exclude his testimony as impermissible bolstering under Federal Rules of Evidence 403 and 702.

***e. Blackburn's testimony confuses, rather than helps, the trier of fact***

Blackburn's own resumé confirms he has no qualifications sufficient to render him an expert on autodialer technology and his report verifies he did not actually implement any recognized methodology in reaching his conclusions (other than agreeing and disagreeing with other witnesses as suited his conclusions).

Indeed, one of the reasons that "[a] witness … may not testify to the legal implications of conduct" is that "merely telling [a] jury what result to reach is not helpful to the jury." *Montgomery*, 898 F.2d 1541 (citing to Fed.R. Evid. 704 committee notes). Indeed, for this reason, "[a]n expert may not … tell the jury what result to reach" and is "not admissible testimony." *Id.*

**B. Blackburn's Ascertainably Testimony Should be Excluded**

Blackburn has no, let alone sufficient, qualifications to opine on the ascertainability of class members. Indeed, Blackburn has not identified a single instance where he has been involved in the administration of any class action, identifying class members, or implementing notice protocols. *See* Blackburn Rep. at ¶¶ 74-80. Instead, Blackburn's sole experience that could conceivably have any relevance here at all consists of his "work on many civil and criminal cases that require information on a cell phone that was used during the commission of a crime." *Id.* at ¶ 78. Further, Blackburn's unsupported "finding" that "many 'pre-paid' cellphones use bogus names and addresses when they are purchased" constitutes pure speculation and therefore will not help the jury. *See R&R Intern., Inc. v. Manzen, LLC*, 2010 WL 3605234, at *14 (S.D. Fla. Sept. 12, 2010) (*Daubert* not satisfied where expert "used methods that amounted to little, if anything, more than speculation and conjecture").

In addition, Blackburn's unsupported conclusion that reverse look-ups are not 100% percent reliable is irrelevant as the standard for ascertainability merely requires that at some point it will be possible to identify class members on the basis of "objective criteria" and through a "manageable process that does not require much, if any, individual inquiry." *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *4 (S.D. Fla. Dec. 24, 2014) (quoting from *Newberg on Class Actions*, § 3.3, p. 164 (5th ed. 2012)). Because Defendant and its agents possess and have produced all the telephone numbers to which they sent advertisement text messages, the class is certainly ascertainable. *See Reyes v. BCA Fin. Serv's, Inc.*, 2018 WL 3145807, at *2 (S.D. Fla. Jun. 26, 2018) ("the Court finds that Reyes' proposed class [in TCPA action] is ascertainable and administratively feasible."); *see also Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 313 (S.D. Fla. 2017) (finding ascertainability in TCPA case);

*see also Northrup v. Innovative Health Insurance Partners, LLC*, 329 F.R.D. 443, 451 (M.D. Fla. Jan. 2, 2019) (cell phone numbers sufficient to ascertain a class).

For these reasons, and consistent with the legal analysis *supra*, Blackburn's belatedly offered opinions and conclusions about the class' ascertainability should be excluded.

## IV. BLACKBURN'S OPINIONS PRECLUDED IN PRE-TRIAL MOTIONS

The foregoing authorities apply not only to preclude Blackburn's opinions from being presented at trial. Because a district court must conduct a "*Daubert*-like critique" before relying on expert testimony in pre-trial proceedings, Blackburn's opinions are likewise precluded from use on all motions relating to class certification and summary judgment. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 1990).

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court enter an order excluding the opinions and testimony of Blackburn.

Dated: July 26, 2019

Respectfully submitted,

By: /s/ Ruben Conitzer
David P. Milian (Fla. Bar No. 844421)
*dmilian@careyrodriguez.com*
*mmartucci@careyrodriguez.com*
Ruben Conitzer (Fla. Bar No. 100907)
*rconitzer@careyrodriguez.com*
*ecf@careyrodriguez.com*
Juan J. Rodriguez (Fla. Bar No. 613843)
*jrodriguez@careyrodriguez.com*
*cperez@careyrodriguez.com*
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Counsel for Plaintiff Troy Eldridge and the Putative Class*