## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 18-22531-Civ-WILLIAMS/TORRES

TROY ELDRIDGE,

        Plaintiff,

v.

PET SUPERMARKET, INC.,

        Defendant.

_____/

## ORDER ON PENDING MOTIONS RELATED TO EXPERT SNYDER

This matter is before the Court on Pet Supermarket, Inc.'s ("Defendant") *Daubert* motion [D.E. 78] and motion to strike [D.E. 87] against Troy Eldridge's ("Plaintiff") expert Randall Snyder ("Mr. Snyder"). Plaintiff responded to Defendant's *Daubert* motion on September 11, 2019 [D.E. 103] and the motion to exclude on September 4, 2019. [D.E. 98]. Plaintiff also filed his own motion to strike. [D.E. 92]. Defendant replied to the *Daubert* motion on September 18, 2019 [D.E. 112] and the motion to strike on September 11, 2019. [D.E. 104]. Therefore, Defendant's motions are now ripe for disposition. After careful consideration of the motions, responses, replies, relevant authorities, and for the reasons discussed below, Defendant's motions are **GRANTED in part and DENIED in part**. Plaintiff's motion is **DENIED**.[1]

---

[1]     On January 27, 2020, the Honorable Kathleen Williams referred these motions to the Undersigned Magistrate Judge for disposition. [D.E. 129].

### *I. APPLICABLE PRINCIPLES AND LAW*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).[2]   The

---

[2]    Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert=s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, its duty is not Ato make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152

(1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

## II. ANALYSIS

Plaintiff filed this putative class action alleging that Defendant violated the Telephone Consumer Protection Action, 47 U.S.C. § 227, *et seq.* ("TCPA"). The TCPA allows an individual to bring claims for unwanted calls made with an automatic telephone dialing system ("ATDS"). An ATDS system within the meaning of the TCPA is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227. On March 15, 2019, Plaintiff served Mr. Snyder's declaration, including his expert testimony and several attachments. [D.E. 56-1]. The parties then deposed Mr. Snyder on May 20, 2019.

Defendant now seeks to exclude Mr. Snyder because he fails many of the admissibility standards under Rule 702 of the Federal Rules of Evidence and *Daubert*. Defendant claims, for example, that Mr. Snyder is unhelpful to the trier of fact in determining the ascertainability of the putative class. Defendant also accuses Mr. Snyder of failing to perform any analysis of the proposed class and neglecting to develop any hypothesis to determine if phone numbers and subscriber information can even be cross-referenced. Moreover, Defendant argues that Mr. Snyder is unreliable because he fails to support his conclusions with any reliable

facts. Instead, Defendant suggests that Mr. Snyder relies on flawed definitions as to what constitutes an ATDS under the TCPA despite having no relevant knowledge or training of the underlying telephone systems. And even if Mr. Snyder used a proper methodology, Defendant maintains that Mr. Snyder's opinions cannot stand because it is replete with impermissible legal conclusion. For these reasons, Defendant requests that Mr. Snyder and his expert report be excluded.

### A. *Whether Mr. Snyder is Qualified*

The first issue is whether Mr. Snyder is qualified to render an expert opinion in this case. An expert may be qualified to testify in multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129 (citing *Maiz,* 253 F.3d at 665, 669). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F.Supp.2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise

[go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 n. 10 (5th Cir. 1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing*, 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")).

Defendant argues that Mr. Snyder is unqualified because – despite his substantial education, training, and experience in the telecom industry – he has no experience in determining whether Defendant's telephone systems functioned as an ATDS or if they could send text messages without human intervention. Defendant's argument is unpersuasive, however, because "an expert's qualifications need not be narrowly tailored to the precise circumstances of [a] case[.]" *Balthazar Mgmt., LLC v. Beale St. Blues Co., Inc.*, 2018 WL 6928698, at *3 (S.D. Fla. Oct. 30, 2018); *see also Furmanite Am., Inc. v. T.D. Williamson,* 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand.") (citing *Maiz,* 253 F.3d at 665). Indeed, an expert "may testify regarding narrow sub-topics within his broader expertise — notwithstanding a lack of specific experience with the narrower area —

as long as his testimony would still assist a trier of fact." *Remington v. Newbridge Secs. Corp.*, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014); *see also Maiz,* 253 F.3d at 665 (11th Cir. 2001) (affirming the district court's decision to permit an economic expert to testify on damages relating to real-estate fraud, even though the expert had no specific real-estate experience, finding the issue of damages was sufficiently within the expert's broader expertise).

Given Mr. Snyder's education credentials and substantial experience in telecommunications, he meets the "relatively low threshold" for an expert to be qualified. *J.G. v. Carnival Corp.*, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (explaining that once there exists "reasonable indication of qualifications," those qualifications then "become an issue for the trier of fact rather than for the court in its gate-keeping capacity")). Mr. Snyder has, for instance, 34 years of experience in telecommunications with a background in both wireline and wireless network technology. He also has been retained as a testifying or consulting expert in more than 320 TCPA cases because of his background in software engineering. While he may not be the best expert to opine on the facts of this case, that is not the threshold for an expert to be qualified under *Daubert*. Rather, so long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing

*Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)).

Because Mr. Snyder meets that threshold and possesses general knowledge of the facts in this case, he is qualified under *Daubert* despite lacking specialized training and experience with Defendant's telephone systems. *See Whelan v. Royal Caribbean Cruises Ltd.*, 976 F.Supp.2d 1328, 1331 (S.D. Fla. 2013) ("[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact."). To the extent Defendant seeks to undermine Mr. Snyder's knowledge of the telephone systems that are at issue in this case, Defendant may do so via impeachment. Therefore, Defendant's motion to exclude Mr. Snyder as unqualified is **DENIED**.

### B.    *Whether Mr. Snyder's Opinions are Reliable*

The next issue is whether Mr. Snyder's opinions are reliable. "The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

Defendant claims that Mr. Snyder's opinions are unreliable because they are based on insufficient facts, evidence, analysis, testing, personal knowledge, and experience with the telephone systems in this case.[3]  Defendant first argues that Mr. Snyder's expert report conflicts with his deposition testimony.  Mr. Snyder opines, for instance, in his report that two of the telephone systems have "the capacity to store or produce telephone numbers using a random or sequential number generator, and to dial such numbers."  [D.E. 56-1 at ¶¶12-13, 15-16].  Yet, when Defendant deposed Mr. Snyder, Defendant asserts that Mr. Snyder testified that one system does *not* have the capacity to produce or dial telephone numbers.  Given this contradiction, Defendant maintains that Mr. Snyder's opinions are unclear and unreliable.

Defendant also contends that Mr. Snyder's opinions should be stricken because he did not physically inspect the equipment or software functionality that allegedly violated the TCPA.  This is apparently a critical mistake because, without a physical inspection, Mr. Snyder cannot opine with any degree of confidence that the allegations in this case have merit.  Defendant further argues that Mr. Snyder failed to review any deposition testimony or system functions, and that he is

---

[3]    This argument is related directly to Rule 702, which requires that an expert's testimony be "based on sufficient facts or data."

attempting to regurgitate facts without any testing, corroboration, personal knowledge, or analysis. Defendant suggests that Mr. Snyder's opinion is akin to no opinion at all because he has no idea how the the internal processes of the telephone systems work or how (and to what extent) they interact with each other. While Mr. Snyder performed a user-based test run of the telephone systems by sending out trial text messages and providing screenshots of the user interface, Defendant maintains that these screenshots are not a factual basis to form any credible opinion about the capacities of the telephone equipment. Defendant therefore concludes that the Court should exclude Mr. Snyder's opinions as speculative and unreliable.

Defendant has raised several viable arguments as to why a jury should not find Mr. Snyder's opinions to be compelling. The problem with these arguments is that none of them are sufficient for a wholesale exclusion under *Daubert*. Take, for instance, Defendant's argument that Mr. Snyder's opinions in his expert report are, in some respects, contradictory to his deposition testimony. While that may be true, it does not present a viable reason for exclusion. Rather, these reasons are aimed at the weight and credibility of Mr. Snyder's opinions – not whether they should be admissible. If Defendant wishes to undermine Mr. Snyder's opinions, Defendant may impeach Mr. Snyder and have the jury determine the appropriate weight that should be given to his opinions.

The same reasoning applies to the question of whether Mr. Snyder should be excluded for failing to inspect the telephone equipment in this case. Defendant

11

claims that, with respect to one system, Mr. Snyder relied solely on an operational handbook and log files with no assurances that this is how the telephone systems operate. Defendant's argument is not entirely without merit because courts have excluded Mr. Snyder in prior cases for similar reasons. *See, e.g., Legg v. Voice Media Grp., Inc.*, 2014 WL 1767097, at *5 (S.D. Fla. May 2, 2014) (striking Mr. Snyder because he did "not know whether [the defendant] actually used the systems discussed in the handbook, or in the manner provided in the handbook. Indeed, Snyder cannot even say whether Phaz2's own equipment conforms to the specifications discussed in its handbook.").

But, this case is noticeably different because there is other corroborating evidence in the record that the materials relied upon is how the systems actually operated. [D.E. 77-3 at 40] ("Q. And does this document accurately describe how the Oracle Responses system works for SMS services? A. Yes."). There is also evidence that Defendant's telephone systems are similar in operational functions, adding additional assurances that Mr. Snyder's opinions are reliable. [D.E. 77 at ¶¶ 62, 73]. While the failure to physically inspect a telephone system may provide a sufficient reason in some circumstances to exclude an expert's opinion, it is unpersuasive to do so when there is other evidence in the record that gives an expert's opinion additional credibility. *See, e.g., Strauss v. CBE Grp., Inc*, 2016 WL 2641965, at *3 (S.D. Fla. Mar. 23, 2016) ("Although Hansen did not visually inspect the equipment in preparing the Report, he reviewed, among other things, CBE's patent application for the MCA, Plaintiff's account notes, and Johnson's deposition

transcript. In light of Hansen's familiarity with CBE's dialing systems and review of evidence particular to this case, the Court finds sufficiently reliable Hansen's expert opinion on the technologies CBE used to place the calls at issue."). Because Mr. Snyder reviewed at least one of Defendant's telephone systems and there is other evidence in the record that adds credibility to Mr. Snyder's opinions, the decision to forego a physical inspection is inconsequential. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at \*9 (N.D. Cal. Aug. 3, 2018) ("[T]he fact that Mr. Snyder did not physically inspect the Ytel Dialer does not preclude Mr. Snyder's testimony about its nature.").[4]

### C.  *Whether Mr. Snyder's Opinions are Helpful*

The third factor to consider is whether Mr. Snyder will be helpful to the trier of fact. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). While "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre,* 308 F. App'x at 383). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful

---

[4]     We need not specifically address Defendant's remaining arguments because they are weaker than the ones already considered. Defendant contends, for example, that Mr. Snyder's opinions rely on an outdated definition of "capacity" with respect to two of the telephone systems. But, even if true, it is still not a sufficient reason to exclude Mr. Snyder. Instead, Defendant may impeach Mr. Snyder and seek to undermine his opinions at trial.

and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

Defendant argues that Mr. Snyder is unhelpful to the trier of fact because his opinions on whether the proposed class is ascertainable falls within the knowledge of a mere lay witness. Plaintiff disagrees and claims that Mr. Snyder has 34 years of experience in the telecommunications industry and he has testified or consulted for parties in approximately 360 cases involving the TCPA. Plaintiff also highlights Mr. Snyder's prior work experience as a software engineer, including Mr. Snyder's responsibilities for designing, developing, testing, and deploying computer code for complex data telecommunications systems. Because Mr. Snyder has also taught classes on telecommunications network technologies, authored educational textbooks, and co-founded the first combined text message based mobile marketing system, Plaintiff concludes that Mr. Snyder is more than qualified to be an expert in this case.

There is no question that Mr. Snyder has an impressive resume and that he is qualified to render an opinion in this case. However, Mr. Snyder's expert report fails to rely on any special expertise in ascertaining the identity of the proposed class. Mr. Snyder opines, for example, that "[r]eliable current contact information can be ascertained based solely on the telephone number called on the date the call was made." [D.E. 56-1 at ¶ 87]. Mr. Snyder then states that "commercially available third-party information service companies that collect, maintain, and analyze telephone number data," can be used to identify proposed class members.

If Mr. Snyder's statement is true, he offers "nothing more than what a factfinder could comprehend through the presentation of non-expert witnesses[.]" *Legg*, 2014 WL 1767097, at \*3. In other words, there is no special expertise that Mr. Snyder presents if the information needed to determine whether a class is ascertainable is simply available from a review of third-party sources. Judge Cohn struck Mr. Snyder's expert testimony for similar reasons in *Legg* because the method that Mr. Snyder used in that case, albeit time-consuming, was within the understanding of an average lay person. *See id.* at \*3. The same reasoning applies here because "[e]xpert testimony . . . is meant to help the factfinder interpret evidence or issues that can only be understood through the application of specialized expertise." *Id.* at \*3 (quoting *Rink,* 400 F.3d at 1291); *see also Frazier,* 387 F.3d at 1262 (finding that expert testimony is admissible only if it "concerns matters that are beyond the understanding of the average lay person."). Because Mr. Snyder's opinion on ascertainability relies on nothing more than what a factfinder could comprehend through non-expert witnesses and third-party sources, Mr. Snyder's testimony does not rise to the level of an expert witness on this specific issue and therefore Defendant's *Daubert* motion to strike this limited portion of Mr. Snyder's opinion is **GRANTED**.

In a similar vein, Defendant complains that Mr. Snyder's expert report must also be stricken because it includes impermissible legal conclusions. Defendant argues that Mr. Snyder included in his expert report the exact language of the TCPA to meet the statutory definition of an ATDS and that he is attempting to

instruct the jury as to the state of the law. [D.E. 56-1 at ¶12] ("Defendant utilized equipment which has the capacity to store or produce telephone numbers using a random or sequential number generator, and to dial such numbers"); ("Defendant utilized equipment which has the capacity to dial telephone numbers from a stored list or database of telephone numbers without any human involvement.").

Defendant relies again on Judge Cohn's decision in *Legg*, where Mr. Snyder intended to testify that the systems in that case met the legal definition of an ATDS. However, Defendant's reliance on *Legg* is not entirely on point because Mr. Snyder has merely tracked the language of the TCPA; he has not affirmatively opined that Defendant's systems constitute an ATDS. Defendant has a valid point, on the other hand, that the definition used is an implicit way of instructing the jury of the law and therefore rises to the level of a legal conclusion.

But, there is a subtle and important difference when an expert directly states that a system constitutes an ATDS as opposed to a system that meets every component of an ATDS definition. As a recent decision in another district made clear with respect to Mr. Snyder, the former is an impermissible legal conclusion because it directly instructs the jury on a legal determination whereas the latter leaves it to the jury to determine the weight and credibility of the opinion:

> Although [Mr. Snyder's] conclusion tracks the statutory definition of an ATDS, and Snyder recites his understanding of how an ATDS is defined, Snyder's report does not explicitly conclude that the Five9 dialing system is an "ATDS" under the TCPA. To the extent that Snyder attempts to offer an opinion on the legal definition of ATDS, the meaning of the TCPA, or the ultimate legal implications of the facts at issue at trial, those opinions could, and should, be excluded under Rule 702. But Snyder does not necessarily offer legal

16

conclusions simply because his opinion about the Five9 system's capacity to make automatically-dialed calls tracks the statutory definition of an ATDS. Rather, Snyder" expected opinion testimony appears to "embrace[ ] an ultimate issue of fact" rather than "state[ ] a legal conclusion." *Id.* (noting that district courts must distinguish between the two).

*Morgan v. On Deck Capital, Inc.*, 2019 WL 4093754, at *3 (W.D. Va. Aug. 29, 2019 (internal citation marks omitted). Because Mr. Snyder's opinion in this case is more analogous to *Morgan*, merely tracks the language of the TCPA, and leaves it to the jury to determine whether the telephone systems constitute an ATDS, Mr. Snyder has not crossed the threshold of presenting an impermissible legal conclusion. Therefore, to this extent, Defendant's *Daubert* motion is **DENIED**. *See, e.g., Perez v. Rash Curtis & Assocs.*, 2019 WL 1491694, at *4 (N.D. Cal. Apr. 4, 2019) (denying defendant's motion to strike because "the function and capacities of these devices bear on the central factual issues before the trier of fact").

## IV. CONCLUSION

For the foregoing reasons, the pending motions related to Mr. Snyder are **GRANTED in part and DENIED in part**:

A. Defendant's *Daubert* motion to exclude Mr. Snyder as unqualified, unreliable, and unhelpful is **DENIED**. [D.E. 78].

B. Defendant's motion to exclude Mr. Snyder's opinion on whether the proposed class is ascertainable is **GRANTED**. [D.E. 78].

C. Defendant's motion to exclude Mr. Snyder's supplemental expert report is

**DENIED**, including Defendant's motion for fees and costs.[5]  [D.E. 87].

D. Plaintiff's motion to strike Defendant's motion to strike is **DENIED**.[6]

[D.E. 92].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of March, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[5]    On August 20, 2019, Defendant filed a motion to strike Mr. Snyder [D.E. 87] because Plaintiff served it late on July 24, 2019 – six weeks *after* discovery closed on June 14, 2019.   Defendant argues that the supplemental report [D.E. 87-1] is untimely and prejudicial because Defendant is unable to take any discovery – including a second deposition – related to Mr. Snyder's supplemental opinions unless discovery is reopened.   Defendant also complains that the untimeliness prevented a meaningful review of Mr. Snyder's reports prior to the deadline for the parties to file dispositive motions on July 26, 2019.   While we agree that the supplemental report is untimely, Defendant's motion is unpersuasive because there are no material differences between the two reports.  The Court has independently reviewed both reports and while there are obviously some differences, the supplemental report includes nothing that Defendant did not already know before the end of the discovery period.   Defendant's motion is also not compelling because, for the reasons set forth above, Mr. Snyder may not provide an expert opinion on the ascertainability of the proposed class.   For these reasons, Defendant's motion to strike Mr. Snyder's supplemental report is **DENIED** or otherwise **DENIED as moot**.

[6]    On August 25, 2019, Plaintiff filed a motion to strike Defendant's motion to strike Mr. Snyder [D.E. 92] because, in seeking to exclude Mr. Snyder's supplemental expert report, Defendant failed to confer as required under the Local Rules.  We offer no opinion on whether Defendant failed to confer.  But, even if Defendant failed to do so, we exercise our discretion to consider the merits of Defendant's motion.  As such, Plaintiff's motion to strike is **DENIED**.  *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp. .,* 744 F.Supp.2d 1297, 1302 (S.D. Fla. 2010) (choosing not to deny motions based on even "egregious" and "troublesome" violations of Local Rule 7.1 because denial would "unfairly penalize the parties, who presumably had no involvement in their counsel's violations.").