UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-22531-CIV-WILLIAMS

TROY ELDRIDGE,

    Plaintiff,

v.

PET SUPERMARKET INC.,

    Defendant.

_____/

## ORDER

This matter is before the Court on Defendant Pet Supermarket Inc.'s motion to dismiss (DE 116) Plaintiff's Second Amended Complaint (DE 17) ("Complaint") for lack of standing, filed on September 24, 2019. On October 8, 2019, Plaintiff filed a response (DE 119) and on October 15, 2019, Defendant filed a reply (DE 120). For the reasons discussed below, the Defendant's motion to dismiss is **GRANTED**.

I.   **BACKGROUND**

On June 22, 2018, Plaintiff Troy Eldridge initiated this putative class action against Pet Supermarket Inc. for alleged violations of the Telephone Consumer Protection Act ("TCPA"). Plaintiff asserts that Pet Supermarket transmitted telemarketing and advertising text messages to him and others similarly situated without consent by using an Automatic Telephone Dialing System ("ATDS"). (DE 17 at 1.)

Defendant owns and operates a pet care supply retail chain throughout the United States. (*Id.* at ¶¶ 19, 20.) Plaintiff claims that Pet Supermarket sent him seven unauthorized telemarketing and advertisement text messages between December 19, 2017 and June 8, 2018. On December 19, 2017, Plaintiff visited a Pet Supermarket store

in Miami, Florida to purchase items for his dog. (*Id.* at ¶ 21.) During the visit, Plaintiff learned about a raffle for a yearlong supply of free pet food. (*Id.* at ¶ 22.) After finding that he could enter the raffle by texting the word "PETS" to "650-47," Plaintiff proceeded to do so. (*Id.* at ¶¶ 23, 24.) Defendant immediately replied with the following two messages:

> **PETS: Entry received! You're Incld in this month's drawing and to receive text offers. Msg&Data rates may apply. 4msgs/mo. Text HELP for help – Reply STOP to end**
>
> **PETS: No purchase necessary. 1 winner/mo. Rules at http://mmrs.co/5pdf5F You consent to receive autodialed text messages from Pet Supermarket. -Reply STOP to end**

(*Id.* at ¶ 25.) Plaintiff alleges that Pet Supermarket retained his cell phone number from the raffle and subsequently included him in its automated text advertising campaign without his consent. (*Id.* at ¶ 27.) On February 24, 2018, Defendant sent Plaintiff another text from the "650-47" number:

> **PET SUPERMARKET: We're updating our # to better serve you. Soon, your favorite pet deals will come from 37623. Save $5 w/code14136end 2/25 – Reply STOP to end**

(*Id.* at ¶ 26.) From April 20, 2018 to June 8, 2018, he claims that Defendant sent him four additional telemarketing and advertising text messages from its "376-23" short-code number:

- April 20, 2018: **PET SUPERMARKET: Welcome to our New #! Puppy Kisses & Purring Faces await your Embraces at our Adoption Event this Fri, Sat&Sun. See you there! Reply STOP to end.** (*Id.* at ¶ 29.)

- May 11, 2018: **PET SUPERMARKET: Happy Mother's Day! Celebrating all Pet Moms this weekend w/ $5 off $30 Coupon # 14245. Ends Sun 5/13 Reply STOP to end.** (*Id.* at ¶ 32.)

2

- May 25, 2018: **PET SUPERMARKET: Celebrate Memorial Day Weekend with Savings! Save $3 on your purchase of $15 or more 1/code 14235 Ends 5/28. Reply STOP to end.** (*Id.* at ¶ 33.)

- June 8, 2018: **PET SUPERMARKET: Looking to Add a pet to the family? Adoptions in-store Fri, Sat & Sun + FREE AdoptionsGuide w/ Coupons for new pet parents. Reply STOP to end.** (*Id.* at ¶ 34.)

Plaintiff asserts that Defendant's texts "invaded [his] privacy, intruded upon his seclusion and solitude, wasted his time by requiring him to open and read the messages, depleted his cellular telephone battery, and caused him to incur a usage allocation deduction to his text messaging or data plan." (*Id.* at ¶ 40.)

## II. LEGAL STANDARD

### A. Article III Standing

To bring a suit in federal court, a party must meet the standing requirements of Article III of the Constitution. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

### B. Motion to Dismiss for Lack of Standing

Because standing is jurisdictional, a defendant can move to dismiss a complaint for lack of standing under Rule 12(b)(1). *See Stalley ex rel. U.S. v. Orlando Reg'l*

*Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists" by a preponderance of the evidence. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Harris v. Bd. of Trustees Univ. of Alabama*, 846 F. Supp. 2d 1223, 1232 (N.D. Ala. 2012). When subject matter jurisdiction is faced with a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

III. **DISCUSSION**

On September 24, 2019, Pet Supermarket filed a motion to dismiss asserting a facial and factual attack for lack of standing. Defendant contends that Plaintiff has failed to adequately plead facts demonstrating a concrete injury-in-fact, an essential element for Article III standing. Defendant relies on *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a recent decision in which the Eleventh Circuit found that the plaintiff's alleged injuries from a single telemarketing text message were insufficient to state a concrete injury. Alternatively, Defendant asserts that to the extent that Plaintiff has adequately

4

stated a concrete injury, Plaintiff cannot withstand a factual attack by establishing that he suffered such an injury by a preponderance of the evidence.

### A. How Many Text Messages Violate the TCPA?

The Court first considers the threshold issue of the number of text messages Plaintiff has plausibly alleged are in violation of the TCPA. The number of texts that constitute unconsented "advertisement" and "telemarketing" is relevant to the standing analysis because only conduct that violates the TCPA confers standing. *See Spokeo*, 136 S.Ct. at 1547. Pet Supermarket argues that only two of the text messages constitute unconsented "advertisement" and "telemarketing," while Plaintiff contends that all seven violate the TCPA.

The TCPA prohibits the use of ATDS to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii). A text message to a cell phone qualifies as a "call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"). FCC regulations prohibit the use of an ATDS to make an "advertisement" or "telemarketing" call without the "prior express **written** consent" of the party. *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at *3 (S.D. Fla. Mar. 27, 2018) (quoting 47 C.F.R. § 64.1200(a)(2)) (emphasis added). The TCPA regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services," and "telemarketing" as "the initiation of a telephone call or message for the purpose of

encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f). Other texts require only prior express consent to be legal under the TCPA. See *Edelsberg*, 2018 WL 1509135, at *3.

### 1. The December 19, 2017 Messages

Plaintiff has failed to sufficiently demonstrate that the December 19, 2017 texts violate the TCPA because they simply confirm a "registration process initiated by the plaintiff in response to a marketing communication." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016). Specifically, the December 19, 2017 texts are not "telemarketing" or "advertisement" because Defendant sent them in direct response to Plaintiff's voluntary registration in the raffle and for "confirmatory" purposes. See *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) ("a confirmatory text as part of the process of registering for [a promotional program is] not a telemarketing message."); *Wick v. Twilio Inc.*, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016). The content of the texts relates solely to Plaintiff's registration; the first message merely verified Plaintiff's registration, stating "Entry received! You're incld in this month's drawing and to receive text offers." (DE 17 at ¶ 25.) The second text provided information about the raffle to new registrants, stating "No purchase necessary. 1 winner/mo. Rules at http://mmrs.co/5pf5F." *Id.* Neither of these texts promoted any of Pet Supermarket's products or services, or referenced shopping or purchasing. And the mere fact that the texts confirmed Plaintiff's registration in a raffle, and *may* encourage him to purchase Defendant's products in the future, is "simply too attenuated to give rise to a *clear*, unequivocal implication of advertising." *Edelsberg*, 2018 WL 1509135, at 6 (citation

omitted). Thus, Plaintiff has failed to sufficiently allege that these text messages violate the TCPA; the Complaint indicates that he provided express consent by voluntarily texting Defendant from his cell phone to enroll in the raffle. *See Daniel*, 2015 WL 7454260, at *6 ("the great weight of authority holds that an individual who knowingly provides her telephone number to another party without limiting instructions has given her prior express consent to receive calls at that number from that party.") (citation omitted).

### 2. The Subsequent Messages

The Court finds that Plaintiff has sufficiently alleged that the five text messages he received from February 24, 2018 to June 8, 2018 are unconsented "advertisement" and "telemarketing" in violation of the TCPA. The three text messages sent on February 24, 2018, May 11, 2018, and May 25, 2018 each contain coupons or discount codes, and are therefore "telemarketing" and "advertising" because they appear to encourage the purchase of goods and services. *See Larson v. Harman Mgmt. Corp.*, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016) (text messages containing coupons and discounts "plausibly appear to both advertise the availability of and encourage the purchase of particular goods."). On April 20, 2018 and June 8, 2018, Plaintiff alleges that he received text messages informing him of pet adoption events at one of Defendant's stores. (DE 17 at ¶ 29, 34.) Defendant contends that these texts are informational, as they did not expressly promote or advertise its products or services. The Court disagrees.

Courts have found invitations to events constitute unsolicited advertisement under the TCPA even if they do not expressly market goods or services. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 95 (2d Cir. 2017)

7

(finding that an invitation to free seminar leads to the "plausible conclusion that the fax had the commercial purpose of promoting [the defendant's] products or services. Businesses are always eager to promote their wares and usually do not fund presentations for no business purpose."); *Eric B. Fromer Chiropractic, Inc. v. Si-Bone, Inc.*, 2019 WL 3577050 (N.D. Cal. Aug. 5, 2019). Even though Defendant's text messages do not expressly promote its products or services, they nonetheless support the reasonable conclusion that they were for a commercial purpose. Specifically, the texts raise the inference that they were intended to encourage people to attend the adoption event, adopt a pet, and purchase products for their care. This inference is bolstered by the June 8, 2018 text's reference to a new pet parent guide with coupons for attendants. (DE 17 at ¶ 29, 34.) Because Plaintiff maintains that he did not provide express written consent to receive any of these texts, he has adequately alleged that they violate the TCPA.

### B. Does Plaintiff's Complaint Survive a Facial and Factual Attack for Lack of Standing?

Defendant has asserted a facial and factual attack on the Complaint for lack of standing—specifically, for lack of a concrete injury-in-fact. Accordingly, there are two issues before the Court: (1) whether Plaintiff has adequately alleged a concrete injury-in-fact, and (2) whether Plaintiff has established by a preponderance of the evidence that he suffered a concrete injury-in-fact. *See Stalley*, 524 F.3d at 1232.

"To establish standing, an injury in fact must be concrete." *Salcedo*, 936 F.3d at 1167. A damage can constitute a concrete injury even if it is intangible. *See id.* "In determining whether an intangible harm constitutes injury in fact, both history and the

judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549. Courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Moreover, Congress "is well positioned to identify tangible harms that meet minimum Article III requirements," and "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (citation and brackets omitted). A plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing still requires a concrete injury even in the context of a statutory violation." *Id.*

Plaintiff's allegations regarding the injuries he sustained from Defendant's text messages are contained in a single sentence: he claims that the texts "invaded [his] privacy, intruded upon his seclusion and solitude, wasted his time by requiring him to open and read the messages, depleted his cellular telephone battery, and caused him to incur a usage allocation deduction to his text messaging or data plan." (*Id.* at ¶ 40.)

### 1. **Plaintiff's Allegations of Loss of Privacy, Wasted Time, and Intrusion Upon Seclusion Fail to Survive a Facial Attack**

In light of *Salcedo*, the Court must find that Plaintiff's alleged injuries—invasion of privacy, intrusion upon seclusion, and wasted time from receiving five unauthorized text messages over a three-month period—do not state a concrete injury-in-fact. The plaintiff in *Salcedo* brought a putative TCPA class action against a law firm that had sent him a text message offering a discount on its services. There, the plaintiff claimed that the defendant's message "caused Plaintiff to waste his time answering or otherwise

addressing the message," rendered the plaintiff and his cell phone "unavailable for other pursuits," and "resulted in an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device." *Salcedo*, 936 F.3d at 1167. The Eleventh Circuit concluded that these "intangible and ephemeral" alleged harms "qualitatively do not constitute a concrete injury." *Id.* at 1173. In reaching this conclusion, the Eleventh Circuit examined the legislative history of the TCPA as well as historical torts that provide access to federal courts.

First, the court found that the privacy concerns undergirding the TCPA's prohibition on residential telemarketing—loss of privacy in one's home—are qualitatively different from the loss of privacy caused by a single unsolicited text message. The court explained that "[the TCPA's] privacy and nuisance concerns about residential telemarketing are less clearly applicable to text messaging . . . a single unwelcome text message will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does." *Id.* at 1169. Additionally, the court found that the loss of privacy from a single unwanted text message does not have a close relationship to harm that could provide a basis for the historical tort of intrusion upon seclusion, explaining that this tort's "requirement that the interference be 'substantial' and 'strongly object[ionable]' instructs us that a plaintiffs might be able to establish standing where an intrusion upon his privacy is objectively serious and universally condemnable." *Id.* The Eleventh Circuit explained that "Salcedo's allegations fall short of this degree of harm. We do not see this type of objectively intense interference where the alleged harm is isolated, momentary, and ephemeral." *Id.*

10

The Eleventh's Circuit reasoning for refusing to find the plaintiff's allegations of loss of privacy sufficient to state a concrete injury applies equally here. Like the plaintiff in *Salcedo*, Plaintiff "has not alleged that he was in his home when he received [the] message[s]," or "anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone," or any similar scenarios. *Id.* at 1170, 1172; *see also Zemel v. CSC Holdings LLC*, 2017 WL 1503995, at *5 (D.N.J. Apr. 26, 2017). Similarly, the loss of privacy from receiving one unwanted text message per month over a three-month period does not rise to the level of being such an "objectively serious and universally condemnable" intrusion on Plaintiff's privacy, so as to resemble the injury actionable under intrusion upon seclusion. *Id.* at 1171.

Under the reasoning of *Salcedo*, Plaintiff's allegations of wasted time from opening and reading five text messages—received on five discrete occasions over a three-month period—also do not constitute a concrete injury-in-fact. Cases cited by Plaintiff, in which courts have found wasted time from receiving a junk fax or telemarketing call sufficient to confer standing, are distinguishable.[1] *See* DE 119 at 17. As discussed in *Salcedo*, the time wasted from opening and reading a text message is qualitatively different from the time wasted from receiving other forms of telemarketing, because "[a] cell phone user can

---

[1] Specifically, in concluding that wasted time from receiving a single unwanted "telemarketing" text message fails to state a concrete injury-in-fact, the court addressed its decision in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), where it found that the time wasted from receiving a single junk fax satisfied the concrete injury requirement. The court in *Salcedo* explained that the time wasted from receiving a junk fax is qualitatively different from time wasted from receiving a telemarketing text because "[a] fax message consumes the receiving device entirely, while a text message consumes the receiving device not at all." *Id.* at 1168.

11

continue to use all of the device's functions. . . while it is receiving a text message." *Salcedo*, 936 F.3d at 1168. Moreover, the Complaint suggests that Plaintiff spent no longer than seconds each time he opened and read the texts; each text consists of only a few lines and contains less than 30 words. And Plaintiff has not alleged that he spent any time unsubscribing from the texting campaign (by replying to the texts with "STOP"). Accordingly, as in *Salcedo*, the time Plaintiff spent reading the texts—individually or in the aggregate—is appreciably less than the time the Eleventh Circuit has found sufficient to constitute a concrete injury in its previous cases[2]; the court in *Salcedo* explained that "[Eleventh Circuit] precedents strongly suggest that concrete harm from wasted time requires, at the very least, more than a few seconds." *Id.* at 1173.

Plaintiff cites to the Ninth Circuit case *Van Patten v. Vertical Fitness Grp. LLC*, 847 F. 3d 1037, 1043 (9th Cir. 2017), in which the court found that the receipt of two unsolicited text messages was sufficient to confer the plaintiff standing.[3] But in deciding *Salcedo*, the Eleventh Circuit expressly disavowed *Van Patten*, explaining "we find our sister circuit's decision involving this precise issue unpersuasive." *Salcedo*, 936 F.3d at 1168. And while courts in other circuits may disagree with *Salcedo*, *see*, *e.g.*, *Melito v.*

---

[2] Because Plaintiff's allegations regarding loss of privacy, intrusion upon seclusion, and wasted time do not survive a facial attack, the Court need not analyze whether they survive a factual attack.

[3] Plaintiff also relies on district court cases in this circuit that have found that a plaintiff who has received one or two unsolicited telemarketing text messages possesses standing to bring a TCPA claim. However, each of these cases, which relied on the reasoning in *Van Patten*, was issued prior to *Salcedo*.

12

*Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019); *Gadelhak v. AT&T Servs., Inc.*, 2020 WL 808270 (7th Cir. Feb. 19, 2020), this Court is bound by its reasoning.

Plaintiff further argues that *Salcedo* is inapposite because the consumer there received only a single text message, while Plaintiff received several. The Court must disagree. The standing analysis in *Salcedo* focused on the qualitative nature of the alleged harm; the fact that the plaintiff received only one text message did not alter its conclusion that the alleged injuries "are categorically distinct from those kinds of real but intangible harms" sufficient to confer a plaintiff standing. *Id.* at 1172. The Eleventh Circuit explained that "[t]here is no minimum quantitative limit required to show injury; rather the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Id.* at 1172 (citation omitted). The Eleventh Circuit's rationale for finding the plaintiff's alleged loss of privacy and wasted time from receiving a single text message are not qualitatively "the kind of harm that constitutes an injury in fact" applies equally here, where Plaintiff received only one or two sporadic, short texts per month in a three-month period. *Id.* Because Plaintiff's alleged injuries are qualitatively indistinguishable from those alleged in *Salcedo*, the Court must follow the Eleventh Circuit's reasoning and find that they fail to state a concrete harm.[4]

  2. **Plaintiff's Allegations of Consumption of Phone Battery and Data Plan Fail to Survive a Factual Attack**

---

[4] While there may exist a case where the quantitative dimension could alter the qualitative standing analysis—*e.g.*, when a defendant's texts "are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff"—the Court does not believe this to be that case. *Salcedo*, 936 F.3d at 1171; *see also Gadelhak*, 2020 WL 808270, at *3 (noting that the standing analysis in *Salcedo* may have "come out differently in a case in which the greater number of texts strengthened the analogy to the common law tort.").

*Salcedo* did not address whether the consumption of phone battery or a consumer's messaging and data plan constitutes a concrete injury, but the Court need not decide this issue because even if these injuries constitute a concrete injury, the Complaint cannot survive a factual attack. *See Klescewski v. United States*, 843 F. Supp. 543, 544 (D.S.D. 1993) ("The Court, however, need not dismiss the action by reason of its facial examination because the plaintiffs' complaint fails to survive a 'factual' attack."); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 389 (D. Del. 2018) ("when a motion to dismiss presents both types of attacks, the plaintiff must overcome both in order for its claims to proceed."). "If a defendant makes a factual attack upon the court's subject matter jurisdiction, submitting evidentiary materials, the plaintiff is 'also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.'" *Harris*, 846 F. Supp. 2d at 1232 (citation omitted).

Here, Plaintiff has failed to demonstrate by a preponderance of the evidence that Defendant's texts depleted his battery or consumed his cellular data and messaging plan. Defendant introduced portions of Plaintiff's deposition transcript in which he explained that he had subscribed to an unlimited data and messaging plan as of the date of the deposition, and that he did not remember which plan he was on when he received Defendant's texts. *See* DE 116 at 10. Plaintiff further admitted that he did not know if Defendant's texts had cost him any money or whether they had consumed his messaging and data plan. *Id.* Plaintiff has not provided any evidentiary support to show that the texts at issue consumed his phone's battery or data and messaging plan, or caused him

14

to incur any specific charges. Absent such evidence, Plaintiff's allegations regarding depletion of his phone battery or data and cellular plan fail to withstand a factual attack. *See Active Acquisitions, LLC v. B+S Card Servs. GMBH*, 2013 WL 12167540, at *2 (M.D. Fla. May 10, 2013) (dismissing action because the plaintiff failed to "provide[] a trace of evidence refuting [the defendant's] factual attack on subject matter jurisdiction"); *Roberts v. Swearingen*, 358 F. Supp. 3d 1341, 1343 (M.D. Fla. 2019); *Sream Inc. v. HHM Enter. Partners, Inc.*, No. 16-CV-62641, 2017 WL 6409000, at *2 (S.D. Fla. Apr. 27, 2017).

### IV.    CONCLUSION:

For the reasons stated above, the Court finds that the Complaint fails to survive a facial and factual attack for lack of standing.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)    Defendant's Motion to Dismiss (DE 116) is **GRANTED**.

(2)    Plaintiff's Second Amended Complaint (DE 17) is **DISMISSED WITHOUT PREJUDICE**.

(3)    The Clerk of Court shall **CLOSE** this case.

(4)    All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 9th day of March, 2020

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE